[No. F052418. Fifth Dist. Nov. 24, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
SANTIAGO CARDENAS MORELOS et al., Defendants and Appellants.

**COUNSEL**

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant Santiago Cardenas Morelos.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant Diana Vazzano.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lloyd G. Carter and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GOMES, J.**—On November 3, 2005, sheriff's deputies with a search warrant for a house in Reedley announced their presence, but received no answer, then tried without success to open the front door, which was barricaded, and finally entered the house through the backdoor. Inside, they detained Santiago Cardenas Morelos and Diana Vazzano and seized sheets of blank checks, check printing software, sheets of currency, California driver's licenses, Social Security cards, credit cards, credit card statements, firearms, a computer, four printers, laminating sheets, and lists of other people's names, addresses, telephone numbers, dates of birth, California driver's license numbers, Social Security numbers, and potential access codes.

On January 3, 2007, a jury found Morelos and Vazzano guilty of multiple counts of receiving stolen property (Pen. Code, § 496, subd. (a)),[1] forgery of blank checks (§ 475, subd. (b)), forgery of altered checks (§ 476), and possession of forged driver's licenses (§ 470b) and found Morelos alone guilty of money counterfeiting (§ 470, subd. (d)) and felon in possession of a firearm (§ 12021, subd. (a)(1)).[2]

The trial court sentenced Morelos to an aggregate 21-year-four-month term—the two-year midterm for felon in possession of a firearm (§ 12021, subd. (a)(1); count seven) plus a consecutive eight-month (one-third the midterm) term on each of 15 altered check counts (§ 476; counts 10, 26–27,

---

[1] Later statutory citations are to the Penal Code.

[2] Our discussion will omit mention of a third person who was charged and convicted along with Morelos and Vazzano but who is not a party to the instant appeal.

47, 64, 77, 87, 97, 106–107, 122, 130, and 133–135), eight receiving counts (§ 496, subd. (a); counts 9, 19, 29, 93, 129, 131–132, and 141), four blank check counts (§ 475, subd. (b); counts 24, 78, and 142–143), one money counterfeiting count (§ 470, subd. (d); count 114), and one driver's license count (§ 470b; count 70)—and reduced one money counterfeiting count to a misdemeanor with credit for time served (§ 470, subd. (d); count 105) and imposed concurrent two-year terms on all other counts.

The trial court sentenced Vazzano to an aggregate 10-year term—the two-year midterm for receiving (§ 496, subd. (a); count nine) plus a consecutive eight-month (one-third the midterm) term on each of six altered check counts (§ 476; counts 26, 64, 80, 87, 97, and 107), three receiving counts (§ 496, subd. (a); counts 19, 29, and 49), two money counterfeiting counts (§ 470, subd. (d); counts 105 and 114), and one driver's license count (§ 470b; count 70)—and reduced all other counts to misdemeanors with credit for time served.

## ISSUES ON APPEAL

Morelos and Vazzano argue seven issues raising multiple conviction or multiple punishment theories or both and one issue raising Sixth Amendment sentencing theories.[3] (*Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*).) Morelos alone argues an error in the abstract of judgment. We will reverse all but one of the blank check counts as to each, will reverse all but one of the driver's license counts as to each, and will correct an error in Morelos's abstract of judgment, but otherwise we will affirm both judgments.

## DISCUSSION

### 1. *Morelos and Vazzano: Receiving Counts*

Morelos and Vazzano argue that all but one receiving count as to each must be stricken or, alternatively, that sentence on all but one receiving count as to each must be stayed. The Attorney General argues the contrary.

■ With commendable candor, Morelos and Vazzano acknowledge that the receiving counts (counts 9, 19, 28–29, 49, 74, 93, 95, 127, 129, 131–132, and 141 as to each) involve different property stolen from different victims at

---

[3] As to those eight issues, Morelos and Vazzano join in each other's arguments. (Cal. Rules of Court, rule 8.200(a)(5).)

different times. (§ 496, subd. (a).) Even so, they rely on the general rule articulated by our Supreme Court that the "gist of the offense is the purchase or receipt of the stolen goods with guilty knowledge" and that neither "the legal nor moral character of the act is affected in any way by the fact that the stolen property may have belonged to several persons rather than to a single person." (*People v. Smith* (1945) 26 Cal.2d 854, 859 [161 P.2d 941] (*Smith*).) Relying on *Smith*, a later Supreme Court case held, "but one offense of receiving stolen property is shown, although the goods were stolen from different sources," where the evidence shows that the defendant received two items of stolen property "on a single occasion." (*People v. Lyons* (1958) 50 Cal.2d 245, 275 [324 P.2d 556] (*Lyons*), abrogated on another ground in *People v. Green* (1980) 27 Cal.3d 1, 27–34 [164 Cal.Rptr. 1, 609 P.2d 468].)

Morelos and Vazzano cite to no evidence in the record showing they received the stolen property in the receiving counts on a single occasion. "Under *Lyons*, if the evidence shows that goods stolen from different sources were received on a single occasion, there is but one offense of receiving stolen property. However, this rule is inapplicable when there is evidence from which the jury might infer that the goods were not received at the same time or in the same transaction." (*People v. Bullwinkle* (1980) 105 Cal.App.3d 82, 92 [164 Cal.Rptr. 163] (*Bullwinkle*), disapproved on another ground in *People v. Laiwa* (1983) 34 Cal.3d 711, 728 [195 Cal.Rptr. 503, 669 P.2d 1278]; see *People v. Roberts* (1960) 182 Cal.App.2d 431, 436–437 [6 Cal.Rptr. 161].)

▮ Here, where the receiving counts involve different property stolen from different victims at different times and where nothing in the record shows Morelos and Vazzano received the property on a single occasion, "the record reasonably supports the inference that appellant[s] received the various stolen goods at different times and in different transactions." (*Bullwinkle, supra*, 105 Cal.App.3d at p. 92.) Conviction of and sentencing on all the receiving counts were proper as to each.

### 2. *Morelos and Vazzano: Blank Check Counts*

Morelos and Vazzano argue that all but one blank check count must be stricken as to each or, alternatively, that sentence on all but one such count must be stayed as to each. The Attorney General agrees that multiple convictions involving the same victim should be stricken but otherwise argues that a "multiple victims exception for forgery victims should be

crafted—if such an exception does not already exist—to the general rule that simultaneous possession of a single statutorily proscribed item" constitutes a single offense.

■ The blank check counts (§ 475, subd. (b); counts 24–25, 86, 89–90, 100–104, and 142–144 as to each and, additionally, counts 78–79 as to Morelos) involve six victims. The parties all agree, and we concur, that *People v. Bowie* (1977) 72 Cal.App.3d 143 [140 Cal.Rptr. 49] (*Bowie*)— which held that "possession of the 11 identical blank checks was a single act which constituted but one violation of the statute" (*id.* at p. 156)—and *People v. Carter* (1977) 75 Cal.App.3d 865 [142 Cal.Rptr. 517] (*Carter*), superseded by statute on another ground as stated by *People v. Todd* (1994) 22 Cal.App.4th 82, 86 [27 Cal.Rptr.2d 276]—which applied the holding in *Bowie* to possession of a completed check with intent to defraud (*Carter, supra,* at pp. 871–872)—require reversal as to all but six counts (one as to each defendant for every one of the six victims). The only question that remains, then, is whether, as the Attorney General urges, a "multiple victims exception for forgery victims" should save the remaining six counts.

The Attorney General argues that *Bowie* and *Carter* are inapposite since all the checks in both cases were drawn "on a single account—i.e., a single victim" and since "[n]either case considered the divisibility of possession of checks involving multiple victims." Not so. Holding that "appellant possessed all 11 checks at the same time and was guilty of only 1 violation of . . . section 475," *Bowie* carefully observed that "there were 11 'potential victims.' " (*Bowie, supra,* 72 Cal.App.3d at pp. 156–157.) Likewise, *Carter* reversed all but one possession count even though "it is possible that each check will victimize a different person." (*Carter, supra,* 75 Cal.App.3d at p. 871.) In addition, as the fraud statutes in *Bowie* and *Carter* criminalize possession with intent to defraud of "any" check or "a" check, respectively, both cases acknowledge the statutory mandate that "the singular number includes the plural, and the plural the singular." (§ 7; see *Bowie, supra,* 72 Cal.App.3d at p. 156; *Carter, supra,* 75 Cal.App.3d at p. 871.)

Finally, *Carter* expressly rejected an analogous argument to the one the Attorney General raises here. "The Attorney General would distinguish *Bowie* upon the ground that the 11 blank checks in that case were identical, whereas the completed checks here were payable to different payees, and apparently were prepared for the commission of distinct frauds involving different victims. For the purpose of this analysis we accept the view that the merchant who cashes the forged check is likely to be the real victim of the fraud, rather

than the drawee bank or the purported drawer whom the indictment named as the victim in all three counts." (*Carter, supra,* 75 Cal.App.3d at p. 871.) As *Carter* reversed all but one of the three counts of possession of a completed check with intent to defraud even though there were three different victims, so we will reverse all but one of the blank check counts as to each defendant even though there were six different victims.

### 3. *Morelos and Vazzano: Driver's License Counts*

Morelos and Vazzano argue, the Attorney General agrees, and we concur that all but one of the four driver's license counts (§ 470b; counts 70–73) must be stricken as to each since all four driver's licenses bore the personal information of the same victim. (*Bowie, supra,* 72 Cal.App.3d at pp. 156–157.)

### 4. *Morelos and Vazzano: Altered Check Counts*

Morelos and Vazzano argue that all but one of the altered check counts must be stricken as to each since "the underlying possession of the articles governs the number of offenses of conviction." The Attorney General argues the contrary.

■ The altered check counts (§ 476; counts 10–18, 27, 30–48, 51–52, 64–69, 77, 80–85, 87–88, 91–92, 94, 97–99, 106–113, 122–126, 130, and 133–140 as to each) arise under a statute that criminalizes *in the disjunctive* the conduct of anyone "[1] who makes, passes, utters, or publishes, with intent to defraud any other person, *or* [2] who, with the like intent, attempts to pass, utter, or publish, *or* [3] who has in his or her possession, with like intent to utter, pass, or publish," any document the statute enumerates. (§ 476, italics added.) The sine qua non of a *blank* check charge is the actus reus of possession, which is only one disjunctive actus reus of an *altered* check charge. (Compare § 475, subd. (b) with § 476; *ante,* pt. 2.) Here, with no evidence of attempt in the record, the trial court instructed the jury on the actus reus of the making of an altered check and, in the alternative, on the actus reus of the possession of an altered check. (§ 476.)

■ Each altered check count identifies a specific check and a specific fictitious or real payor. Each combination of check and payor is unique. None of those counts specifies which alternative actus reus applies. With commendable candor, Morelos and Vazzano acknowledge the absence of any requirement of jury unanimity on actus reus. (*People v. Sutherland* (1993) 17 Cal.App.4th 602, 618 [21 Cal.Rptr.2d 752] (*Sutherland*).) Congruently,

"charging of the same offense on alternative legal theories" is permissible. (*People v. Ryan* (2006) 138 Cal.App.4th 360, 368 [41 Cal.Rptr.3d 277] (*Ryan*).)

So "where the evidence," as here, "shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 [108 Cal.Rptr.2d 436, 25 P.3d 641]; cf. *Sutherland, supra,* 17 Cal.App.4th at p. 618.) Here, since the jury could reasonably infer that Morelos and Vazzano not only altered genuine checks but also generated fictitious checks at various times during an ongoing forgery operation, all of the convictions of the altered check counts were proper.

### 5. *Morelos and Vazzano: Fragmentation Theory*

Morelos and Vazzano argue that since all of the "possession-related" counts (the receiving counts, the blank check counts, the driver's license counts, and the altered check counts) "originate from the possession or concealment of stolen property" and "carry the same sentence," all but one receiving count as to each must be stricken in order to be "consistent with the rule that a single crime cannot be fragmented into more than one offense." The Attorney General argues the contrary.

Morelos and Vazzano already argued analogous issues as to the blank check counts (*ante,* pt. 2.) and the driver's license counts (*ante,* pt. 3.), and since we agreed with both of those arguments we will reverse as to each all but one of the blank check counts and all but one of the driver's license counts. They already argued analogous issues as to the receiving counts (*ante,* pt. 1.) and the altered check counts (*ante,* pt. 4.), and since we disagreed with both of those arguments we will affirm all of those counts as to each.

Now, in an argument filling less than a page of briefing and citing no cases not already cited, Morelos and Vazzano request additional relief with reference to the counts already adjudicated. (*Ante,* pts. 1.–4.) Even if correct in the abstract, the fragmentation theory they argue adds nothing relevant to the facts here. (Cf. *People v. Cross* (2008) 45 Cal.4th 58, 67 [82 Cal.Rptr.3d 373, 190 P.3d 706].) We decline their request.

### 6. *Morelos and Vazzano: Counts 47 and 48*

Morelos and Vazzano argue that since the same check is the basis of two altered check counts (counts 47 and 48) one of those counts must be stricken as to each. The Attorney General argues the contrary.

The parties agree, and we concur, that two forgery convictions cannot arise from one check. (See *Ryan, supra,* 138 Cal.App.4th at pp. 368–369.) The question before us, then, is whether both counts at issue arise from the same check.

Identical language in four altered check counts—not only in counts 47 and 48 but also in counts 51 and 52—identifies the same payee. Exhibits relevant to those four counts show two checks for counts 47 and 48 (People's exhibit 83) identical as to bank, date, check number, payor, payee, and amount (in both text and numbers) and two checks for counts 51 and 52 (People's exhibits 84–85) identical as to bank, date, check number, payor, and payee, and amount (except that the amount in text is the same as, and the amount in numbers is one dollar higher than, the amount in both text and numbers in the checks for counts 47 and 48).

In argument to the jury, the prosecutor recalled that the payee "testified to two checks—I'm sorry, make that three checks, might even be four checks. Four checks because there's two on People's 83." No defense objection to her argument is in the record. An entry in the clerk's minutes shows that two checks from the payee were marked for identification, respectively, as People's exhibits 84 and 85 as to counts 51 and 52.

Despite that record, Morelos and Vazzano rely on an inference from a single ambiguous entry in the clerk's minutes showing that a "check on front and back" from the payee was marked for identification as People's exhibit 83 as to "counts 47–48." The reporter's transcript of that date shows nothing other than that voir dire was underway.

■ "As a general rule, a record that is in conflict will be harmonized if possible," but if that is not possible then "whether one portion of the record should prevail as against contrary statements in another portion of the record will depend on the circumstances of each particular case." (*People v. Harrison* (2005) 35 Cal.4th 208, 226 [25 Cal.Rptr.3d 224, 106 P.3d 895], citing *People v. Smith* (1983) 33 Cal.3d 596, 599 [189 Cal.Rptr. 862, 659 P.2d 1152].) The rule in *Ryan* would govern if People's exhibit 83 were to show the front and back of *one* fictitious check, as Morelos and Vazzano argue, but despite overlapping images on one of the pages of that exhibit, the front of a fictitious check is visible on both pages of that exhibit.

Morelos and Vazzano's argument depends on an inference from the record. A contrary inference is that People's exhibit 83 shows *two* fictitious

checks printed on opposite sides of a single sheet of paper, with one check on the top half and one check on the bottom half, to enable *both* to have been cut and passed in violation of section 476.

The record, of course, does not include inferences. The clerk's transcript of counts 47–48 and 51–52 of the information, People's exhibits 83–85, and the reporter's transcript of the relevant prosecutor's argument to the jury consistently show *four* fictitious checks (two in People's exhibit 83 and one each in People's exhibits 84 and 85). So we deem those internally consistent entries in the record to prevail over a single ambiguous entry, which (other than to correlate People's exhibit 83 to counts 47 and 48) we deem to be of no effect. (See *People v. Cleveland* (2004) 32 Cal.4th 704, 768 [11 Cal.Rptr.3d 236, 86 P.3d 302].) Both counts are valid.

### 7. *Morelos: Abstract of Judgment*

■ Morelos argues, the Attorney General agrees, and we concur that the abstract of judgment requires amendment since the reporter's transcript of the oral pronouncement of judgment shows that the trial court reduced to a misdemeanor (with credit for time served) the count 105 money counterfeiting on which the abstract of judgment shows imposition of a consecutive eight-month (one-third the midterm) felony term. (§ 470, subd. (d).) "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Walz* (2008) 160 Cal.App.4th 1364, 1367, fn. 3 [73 Cal.Rptr.3d 494], citing, inter alia, *People v. Mitchell* (2001) 26 Cal.4th 181, 185–186 [109 Cal.Rptr.2d 303, 26 P.3d 1040].)

### 8. *Morelos and Vazzano: Multiple Punishment*

Morelos and Vazzano argue that sentence on all but one of the "possession-related" counts (the receiving counts, the blank check counts, the driver's license counts, and the altered check counts) must be stayed as to each since those counts all arose from an indivisible transaction pursuant to a single objective. The Attorney General argues the contrary.

Preliminarily, we note our prior rejection of Morelos and Vazzano's multiple conviction and multiple punishment argument as to the receiving counts (*ante*, pt. 1.), our prior agreement with their multiple conviction and multiple punishment argument as to all but one of the blank check counts (*ante*, pt. 2.), our prior agreement with their multiple conviction argument as

to all but one of the driver's license counts (*ante*, pt. 3.), our prior rejection of their multiple conviction argument as to all of the altered check counts (*ante*, pt. 4.), and our prior rejection of their multiple conviction and multiple punishment argument on a fragmentation theory as to all "possession-related" counts (*ante*, pt. 5.).

Insofar as not already adjudicated, Morelos and Vazzano's final multiple punishment argument asks that we consider their conduct as "essentially a single act of 'possession' as to all counts" and that we note the trial court's recognition at probation and sentencing that the crimes "were all for the same goal, which is financial gain"—even though the trial court immediately emphasized that the crimes "all involved separate victims, separate acts, separate risks to each of the victims," and "were appropriately sentenced consecutively."

■ " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor.' " (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208 [23 Cal.Rptr.2d 144, 858 P.2d 611], quoting *Neal v. State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) The "intent and objective" test is a rigorous one, however, since "a 'broad and amorphous' view of the single 'intent' or 'objective' needed to trigger the statute would impermissibly 'reward the defendant who has the greater criminal ambition with a lesser punishment.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335–336 [256 Cal.Rptr. 401, 768 P.2d 1078].) To consider Morelos and Vazzano's counterfeiting and forgery operation as "essentially a single act of 'possession' as to all counts" would adopt that impermissible "broad and amorphous view." We decline to do so.

### 9. *Morelos and Vazzano: Absence of Jury Findings at Sentencing*

Morelos and Vazzano argue that the absence of jury findings on whether to impose concurrent or consecutive sentences and on whether the crimes arose from an indivisible transaction pursuant to a single objective violated their Sixth Amendment rights. The Attorney General argues the contrary.

■ Since our Supreme Court has held that *Cunningham*'s Sixth Amendment requirement of jury findings for some sentence choices does not apply to concurrent or consecutive sentences (*People v. Black* (2007) 41 Cal.4th 799, 820–823 [62 Cal.Rptr.3d 569, 161 P.3d 1130]), the doctrine of stare decisis obliges us to reject that aspect of Morelos and Vazzano's

argument (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937] (*Auto Equity*)).

 Likewise, since our Supreme Court has held that none of *Cunningham*'s antecedents—*Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348], *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531], and *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738]—undermines the vitality of California case law rejecting Sixth Amendment challenges to trial court findings that multiple crimes did not arise from an indivisible transaction pursuant to a single objective (*People v. Black* (2005) 35 Cal.4th 1238, 1263–1264 [29 Cal.Rptr.3d 740, 113 P.3d 534], overruled on another ground by *Cunningham, supra*, 549 U.S. at pp. 288–293, as stated in *People v. Towne* (2008) 44 Cal.4th 63, 74–75 [78 Cal.Rptr.3d 530, 186 P.3d 10]; see *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1229 [65 Cal.Rptr.3d 177]; *People v. Cleveland* (2001) 87 Cal.App.4th 263, 268–271 [104 Cal.Rptr.2d 641]), the doctrine of stare decisis obliges us to reject that aspect of Morelos and Vazzano's argument as well (*Auto Equity, supra*, 57 Cal.2d at p. 455).

## DISPOSITION

Morelos's judgment of conviction is modified to strike 14 blank check counts (§ 475, subd. (b); counts 25, 78–79, 86, 89–90, 100–104, and 142–144) and three driver's license counts (§ 470b; counts 71–73). The matter is remanded with directions to the trial court (1) to amend the abstract of judgment as to those counts, (2) to amend the abstract of judgment to show punishment for the money counterfeiting count (§ 470, subd. (d); count 105) as a misdemeanor with credit for time served, (3) to hold a new sentencing hearing in light of the foregoing modifications of the judgment, and (4) to send to the Department of Corrections and Rehabilitation a certified copy of the abstract of judgment as amended by the foregoing modifications of the judgment and by the sentence imposed at the new sentencing hearing. Morelos has the right to be present at the new sentencing hearing but not, if and only if held separately, at proceedings for amendment of the abstract of judgment. (See *People v. Price* (1991) 1 Cal.4th 324, 407–408 [3 Cal.Rptr.2d 106, 821 P.2d 610] (*Price*), superseded by statute on another ground as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161–1165 [68 Cal.Rptr.2d 440].) Otherwise Morelos's judgment of conviction is affirmed.

Vazzano's judgment of conviction is modified to strike 12 blank check counts (§ 475, subd. (b); counts 25, 86, 89–90, 100–104, and 142–144) and three driver's license counts (§ 470b; counts 71–73). The matter is remanded with directions to the trial court (1) to amend the abstract of judgment as to those counts, (2) to hold a new sentencing hearing in light of the foregoing modifications of the judgment, and (3) to send to the Department of Corrections and Rehabilitation a certified copy of the abstract of judgment as amended by the foregoing modifications of the judgment and by the sentence imposed at the new sentencing hearing. Vazzano has the right to be present at the new sentencing hearing but not, if and only if held separately, at proceedings for amendment of the abstract of judgment. (See *Price, supra*, 1 Cal.4th at pp. 407–408.) Otherwise Vazzano's judgment of conviction is affirmed.

Vartabedian, Acting P. J., and Cornell, J., concurred.

The petition of appellant Diana Vazzano for review by the Supreme Court was denied February 11, 2009, S169507. Werdegar, J., did not participate therein.