Filed 7/1/13  P. v. Pena CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EMILSON LADIMIRO PENA,<br><br>    Defendant and Appellant. | 2d Crim. No. B242570<br>(Super. Ct. No. 2011022870)<br>(Ventura County) |

Emilson Ladimiro Pena appeals a judgment following conviction of receiving stolen property, possession of false vehicle registration documents, conspiracy to commit grand theft, attempted grand theft (two counts), and giving false information to a police officer, with a finding that he was on bail in an unrelated prosecution at the time he committed the present crimes ("out-on-bail enhancement").  (Pen. Code, §§ 496d, subd. (a), 182, subd. (a)(1), 664, 487, subd. (a), 148.9, subd. (a), former 12022.1, subd. (b)[1]; Veh. Code, § 4463, subd. (a).)  We modify the judgment to strike a "no-contact" order, and to award Pena an additional 185 days of presentence conduct credit, reverse and remand for resentencing regarding the out-on-bail enhancement, but otherwise affirm.

---

[1] All further statutory references are to the Penal Code unless stated otherwise. References to section 12022.1 are to the version in effect prior to repeal effective January 1, 2012.

## FACTS AND PROCEDURAL HISTORY

In 2011, Ventura County law enforcement agencies formed an auto theft task force to investigate a theft operation involving Toyota Tacoma trucks stolen from Los Angeles County and sold to unsuspecting buyers in Ventura County. The stolen trucks had fraudulent titles and displayed license plates stolen from other Tacoma trucks. The trucks were parked on residential streets, marked for sale with a telephone number, and sold thereafter in cash transactions.

On June 20, 2011, Mario Delgado parked his Toyota Tacoma truck in front of his apartment in Los Angeles. Later that evening, he noticed that his truck was not there and reported the theft to police.

Two days later, Abel Gutierrez saw a Toyota Tacoma truck parked on a residential street in Ventura, marked with a "For Sale" sign. Gutierrez telephoned the contact number and spoke to Baron Ramirez, who identified himself as "Fernando." Gutierrez informed Ramirez that he was interested in purchasing the truck.

Detective George Orozco, a California Highway Patrolman and member of the auto theft task force, also saw the Toyota Tacoma truck marked for sale. The vehicle identification number on the truck matched the vehicle identification number on the truck stolen from Delgado, but the license plate number differed. Orozco telephoned Ramirez, who again identified himself as "Fernando," and the two agreed to meet the following day.

In the afternoon of June 24, 2011, Orozco, working as an undercover officer, arrived at the location of the truck to meet Ramirez. Other law enforcement members of the task force were nearby conducting surveillance. Ramirez left a black Crown Victoria automobile driven by Pena and walked toward the Tacoma truck. Pena then drove away.

Gutierrez and his wife appeared and parked near the truck. Orozco introduced himself to Ramirez and stated that he intended to purchase the truck. Ramirez

stated that he would sell the truck to either Orozco or Gutierrez, but would permit Gutierrez to "test drive" the truck first.

During the test drive, Ramirez appeared nervous and dropped the sales price by $1,000. Gutierrez inquired if title to the truck was "clean," and Ramirez confirmed that it was. Gutierrez then offered to purchase the truck for $6,500. When Ramirez and Gutierrez returned from the test drive, they were arrested by members of the auto theft task force. Police officers later released Gutierrez. Ramirez stated to police officers that he was unaware that the truck was stolen and that Pena was paying him to sell the truck.

Within an hour, police officers conducted a traffic stop on the Crown Victoria automobile and arrested Pena. Officers found fraudulent registration and title documents concealed in the panels of the automobile and keys to other Toyota Tacoma trucks on the floorboard. During a police interview, Pena denied knowledge of the stolen Tacoma truck and stated that he drove Ramirez to Ventura as a favor. Pena also stated that his name was "Ladimiro Aranda" and that he did not own the Crown Victoria automobile. During booking at the police station, officers discovered Pena's true identity after analyzing his fingerprints.

*Prior Crimes & Common Plan*
*(Evid. Code, § 1101, subd. (b).)*

The prosecutor presented evidence that Pena had committed previous crimes involving stolen vehicles. In 2007, Pena attempted to sell a stolen Honda Odyssey automobile to an unsuspecting buyer. Law enforcement officers observed the attempted sale and then arrested Pena. A search revealed that Pena possessed fraudulent vehicle title documents.

In 2010, two Toyota Tacoma trucks were stolen in Orange County and driven to San Jose. Pena followed the trucks in a black Crown Victoria automobile. The trucks were parked on a street in San Jose and marked for sale. Pena drove by and a passenger left his automobile to approach a prospective buyer. Police officers observed

the attempted transaction and arrested Pena and his passenger. Pena confessed and explained the mechanics of the auto theft operation. At the time of trial on the present offenses, a prosecution against Pena was pending in Orange County.

*Conviction and Sentencing*

The jury convicted Pena of receiving stolen property, possession of false vehicle registration documents, conspiracy to commit grand theft, two counts of attempted grand theft, and giving false information to a police officer. (§§ 496d, subd. (a), 182, subd. (a)(1), 664, 487, subd. (a), 148.9, subd. (a); Veh. Code, § 4463, subd. (a).) It acquitted him of the unlawful taking of a vehicle. (Veh. Code, § 10851, subd. (a).) In a separate proceeding, Pena admitted the out-on-bail enhancement regarding the pending prosecution in Orange County. (§ 12022.1, subd. (b).)

The trial court sentenced Pena to a prison term of six years four months, including a two-year consecutive term for the out-on-bail enhancement. The court imposed and stayed sentence for count 8, conspiracy to commit grand theft. It imposed a $1,320 restitution fine, a $1,320 parole revocation restitution fine (stayed), and a $200 court security assessment, ordered victim restitution, and awarded Pena 553 days of presentence custody credit (369 days of actual custody and 184 days of conduct credit). (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a).)

Pena appeals and contends that 1) there is insufficient evidence to support his conviction of two counts of attempted grand theft, and 2) the trial court erred by not staying sentence for attempted grand theft pursuant to section 654. He also raises several sentencing arguments that the Attorney General concedes.

*DISCUSSION*

*I.*

Pena argues that there is insufficient evidence of his specific intent to sell the stolen truck to two prospective buyers. He asserts that the evidence supports conviction of only one count of attempted grand theft.

4

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We must accept logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*Streeter*, at p. 241.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)

All persons involved in the commission of a crime, whether acting directly or aiding and abetting, are principals in the crime committed. (§ 31; *People v. Delgado* (2013) 56 Cal.4th 480, 486.) A person aids and abets the commission of a crime when he: 1) with knowledge of the unlawful purpose of the perpetrator, 2) and with intent or purpose of committing, facilitating, or encouraging commission of the crime, 3) by act or advice, aids, promotes, encourages, or instigates the commission of the crime. (*Id.* at p. 486.) The dividing line between the actual perpetrator and the aider and abettor often is blurred; when two or more persons commit a crime together, each may act in part as the actual perpetrator and in part as the aider and abettor of the other. (*Id.* at p. 487.)

An attempt to commit a crime requires a specific intent to commit the crime and a direct but ineffectual act done toward its commission. (§ 21a; *People v. Watkins*, *supra*, 55 Cal.4th 999, 1018, fn. 9.) A defendant may be convicted of criminal attempt when he acts with the specific intent to engage in the conduct or bring about the consequences proscribed by the attempted crime and performs an act that goes beyond

5

mere preparation. (*People v. Toledo* (2001) 26 Cal.4th 221, 230; *People v. Nguyen* (2013) 212 Cal.App.4th 1311, 1323.)

Sufficient evidence supports Pena's conviction of two counts of attempted grand theft. Pena aided and abetted Ramirez by driving him to Ventura to sell the stolen Tacoma truck. Pena, who had been involved in a similar theft operation in Orange County, had fraudulent documents in his automobile when arrested. Ramirez, for his part, spoke to Gutierrez and Orozco separately, discussed price and arranged to meet to test drive the truck. Each buyer appeared at the meeting place prepared to purchase the truck. The sale to Gutierrez was prevented by police officers, and the sale to Orozco was prevented by Gutierrez's offer to purchase. Thus the jury could conclude that Ramirez had the specific intent to sell the truck to either buyer and took direct but ineffectual steps to do so as to each. Although Pena and Ramirez could complete only one act of grand theft concerning the truck, they could commit multiple acts of attempted grand theft regarding the same property.

*II.*

Pena contends that the trial court erred by not staying sentence on the two counts of attempted grand theft (counts 9 and 10) because his criminal intent and objective regarding those offenses was the same as his intent and objective regarding receiving stolen property (count 6). (§ 654.) He argues that the three offenses rest upon the same physical act of selling the stolen Tacoma truck. (*People v. Jones* (2012) 54 Cal.4th 350, 360 [section 654 prohibits multiple punishment of unlawful possession of firearm by a felon, carrying of concealed and unregistered firearm, and carrying unregistered and loaded firearm in public].)

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 bars multiple punishment for separate offenses arising out of a single occurrence where all of

6

the offenses were incident to one objective. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368.) We review the trial court's implied finding of a separate intent and objective for sufficient evidentiary support. (*Ibid.*) In this review, we do not assume a broad or amorphous view of the defendant's intent and objective. (*People v. Morelos* (2008) 168 Cal.App.4th 758, 769.)

Sufficient evidence supports the trial court's implied finding that Pena had distinct criminal intents and objectives regarding the receiving stolen property offense and the attempted grand theft offenses. The receiving stolen property offense concerned possession and concealment of the Tacoma truck from its owner; the attempted grand theft offenses involved fraudulent sale of the truck to unsuspecting buyers. Concealing and possessing the truck necessarily preceded the attempted grand thefts. The truck was taken from Los Angeles County, its license plates changed, and was placed for sale in Ventura County. Pena's objective in count 6 involved concealing and possessing stolen property, Delgado's truck. Pena's objective in counts 9 and 10 involved obtaining cash from potential buyers in exchange for fraudulent title. Under the circumstances, section 654 does not prohibit multiple punishment.

## III.

Pena raises several sentencing issues that the Attorney General properly concedes. First, he contends that he is entitled to an additional 185 days of presentence conduct credit. (Former § 2933, subd. (e).) Second, he asserts that the trial court lacked jurisdiction to enter a no-contact order with certain persons, absent statutory authority or evidence that he threatened a witness. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 995-996 [no-contact order without statutory authorization or evidentiary support is an unauthorized sentence that may be raised for the first time on appeal].) Third, he points out that the court was required to stay execution of the out-on-bail enhancement because he has not yet been convicted of the Orange County offense. (§ 12022.1, subd. (d) ["Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of

7

the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense"].)

The abstract of judgment also incorrectly reflects Pena's conviction of receiving stolen property as a violation of section 469d, subdivision (a), rather than section 496d, subdivision (a). The trial court shall amend the abstract of judgment to reflect the correct Penal Code section.

We modify the judgment to strike the no-contact order, and to award Pena an additional 185 days of presentence conduct credit, and reverse and remand for resentencing regarding the out-on-bail enhancement, but otherwise affirm. The trial court shall amend the abstract of judgment accordingly and forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

8

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.